PER CURIAM.
¶ 1 Zachary Froehlich appeals a judgment, entered upon his no-contest plea, convicting him of party to the crime of first-degree reckless homicide. Froehlich also appeals the order denying his postconviction motion for resentencing or, alternatively, plea withdrawal. Froehlich argues he is entitled to relief because the State breached the plea agreement. We conclude that even if there was a breach (a matter we do not decide), the breach was merely technical and, therefore, did not warrant relief. We therefore affirm the judgment and order.
BACKGROUND
¶ 2 The State charged Froehlich with first-degree reckless homicide with use of a dangerous weapon; armed robbery with use of force; armed burglary; burglary of an occupied dwelling with use of a dangerous weapon; misdemeanor theft with use of a dangerous weapon; strangulation and suffocation; misdemeanor battery; two counts of felony bail jumping; and four counts of misdemeanor bail jumping, all counts as a repeater and the first six offenses as party to a crime. The charges arose from allegations that Froehlich, while released on bail, entered Kerby Kniess's apartment with Warren Krohn and beat Kniess to death with a baseball bat while Kniess was intoxicated and sleeping. The two men then stole cigarettes, liquor and twenty-one dollars from Kniess. The State also alleged that Froehlich and Krohn attacked and choked another individual they found standing on a sidewalk that evening.
¶ 3 In exchange for Froehlich's no-contest plea to party to the crime of first-degree reckless homicide, the State agreed to dismiss the repeater enhancer for that offense, and to dismiss and read in all remaining charges. A conviction for first-degree reckless homicide exposed Froehlich to a maximum possible sixty-year sentence, with a maximum initial confinement term of forty years and a maximum extended supervision term of twenty years. As part of the plea agreement, the State was "free to argue for a term of initial confinement up to 40 years and a term of extended supervision up to 10 years with the defense free to make other recommendations." The court accepted Froehlich's no-contest plea and ultimately imposed a fifty-year sentence consisting of thirty-five years' initial confinement and fifteen years' extended supervision. Froehlich filed a postconviction motion for resentencing or plea withdrawal, claiming the State breached the plea agreement.[1] The circuit court denied the motion after a hearing, and this appeal follows.
DISCUSSION
¶ 4 A defendant has a constitutional right to enforce a negotiated plea agreement. State v. Smith , 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997). "[O]nce the defendant has given up his [or her] bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled." Id. (citation omitted). A plea agreement is breached when the prosecutor does not make the negotiated sentencing recommendation. Id. at 272. To be actionable, however, a breach must not be merely technical but, rather, must deprive the defendant of a substantial and material benefit for which he or she bargained. State v. Bangert , 131 Wis. 2d 246, 290, 389 N.W.2d 12 (1986). If the breach is material and substantial, a defendant may be entitled to resentencing or plea withdrawal, as the sentencing court, in its discretion, deems appropriate. See State v. Howard , 2001 WI App 137, ¶¶ 36-37, 246 Wis. 2d 475, 630 N.W.2d 244. Whether the State breached the plea agreement and, if so, whether the breach was material and substantial are questions of law that we review de novo. State v. Quarzenski , 2007 WI App 212, ¶ 19, 305 Wis. 2d 525, 739 N.W.2d 844.
¶ 5 Here, Froehlich argues the State breached the plea agreement because it argued for the "maximum sentence" instead of the "maximum term of initial confinement." Assuming without deciding that this argument constituted a breach, we conclude it was merely technical and did not deprive Froehlich of the benefit of his plea bargain.
¶ 6 At sentencing, the State argued that the facts of this case were particularly egregious and had a terrible impact on the victim's family, none of whom believed "that even 40 years which is the maximum is enough." The State later repeated the family's hope that the circuit court would "give [Froehlich] the maximum 40 years." The State also emphasized Froehlich's extensive criminal history, noting that in a two-year span preceding the present offense, Froehlich was charged with a total of forty-one crimes arising from several cases, evincing an inability to learn from his mistakes. The State made no reference to extended supervision or its importance. Rather, it emphasized various reasons Froehlich should be removed from the community. As the circuit court noted in denying Froehlich's postconviction motion, the State's sole focus at sentencing was to urge the court to impose the maximum time of initial confinement, consistent with the plea agreement.
¶ 7 Further, Froehlich understood the State's use of the term "maximum sentence" to mean "maximum term of initial confinement." At sentencing, defense counsel recounted that the State had "taken the position that [the] minimum sentence necessary to protect the public is the maximum allowable term of confinement." Defense counsel then attempted to rebut that argument, claiming that Froehlich's actions did not "support that contention, that the maximum sentence is the minimum amount of time necessary to protect the public." Froehlich thus fails to explain how the State materially and substantially undercut the plea agreement when even Froehlich understood "maximum sentence" to mean "maximum term of initial confinement." Froehlich additionally received the "substantial and material" benefit of his bargain by having fines amounting to $350,000 and exposure to an additional 149 years of incarceration removed.
¶ 8 Finally, Froehlich emphasizes that his postconviction motion followed this court's rejection of appointed counsel's no-merit report. In deciding a no-merit appeal, the question is whether a potential issue would be "wholly frivolous." State v. Parent , 2006 WI 132, ¶ 20, 298 Wis. 2d 63, 725 N.W.2d 915. The test is not whether the attorney or court expects the argument to prevail. That we determine there is an issue of arguable merit in a no-merit appeal does not guarantee success on a subsequent merit appeal. Here, we conclude that, in context, the State's use of the term "maximum sentence" at sentencing did not deprive Froehlich of the substantial and material benefit for which he bargained.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

By failing to object at the sentencing hearing, Froehlich forfeited his right to directly challenge the alleged breach. See State v. Howard , 2001 WI App 137, ¶ 12, 246 Wis. 2d 475, 630 N.W.2d 244. Therefore, the issue should have been raised under the rubric of ineffective assistance of counsel. Id. Because both parties briefed the direct challenge to the alleged breach on its merits, we will overlook the forfeiture. See Village of Trempealeau v. Mikrut , 2004 WI 79, ¶ 3, 273 Wis. 2d 76, 681 N.W.2d 190 (because forfeiture is a rule of judicial administration, a reviewing court has inherent authority to disregard forfeiture and address the merits of an unpreserved argument).